Ms. Bennett, you may proceed. Good morning, Your Honor. We're here today regarding the use of three words. In 2010, the appellants and the applicants, Kelly Breaux and William Erickson. And they decided to go into business together and to provide educational services to children. Why don't you tell us where the PTO erred in deciding that priority of youth was found in the cancer fund? There's a very important distinction that was overlooked by the PTO, the Trial and Appeal Board. And the most critical fact here is, or the most critical issue is, was these words used by the opposer, KidTribe, used, the word, the disputed words, was it used for the purpose, for commercial purposes? Because otherwise we're looking at freedom of speech issues and competition. And there's a strong public policy against preventing people from competing in a market such as, we're talking about hula hoop activities. So if we're talking about using the word hoop, it's of course functional and descriptive, especially how KidTribe, the opposer, used it. It seems to me that there was a stipulation that the case would turn on priority of youth and not descriptiveness or confusion. But a lot of your argument seems to be focused on description and descriptiveness and confusion. Right, and that was really interesting because very early on, and I was surprised that the Trial and Appeal Board didn't scrutinize that because all along, Kelly Breaux and William Erickson, they took the position that the youth in this, the three main Would you reference the record when you hold something? Yes, this was submitted with the brief. It's the hoop hop. Record on appeal number, please. Okay, it is A71. Yes. And I will be referencing as well the script, which is A61. And so I'm holding up a copy of the hoop hop curriculum guide and the hoop-a-loop-a script. Sorry, hoop hop palooza script. Just give us the record of appeal numbers and that way we can look at it and you don't have to hold things up. Well, it helps me have a visual because that's really what the usage was within these two. This is what the Trial and Appeal Board used to base its decision. And I think when we're talking about usage, back to Honorable Reina's question, is that we're talking about use only for trademark use. We're not just talking about use because we can use words all throughout. The critical factor is was this commercial usage for purposes of Section 45, which Section 45 of the Lanham Act strictly arises under Article I, Section 8, Clause 3 of the Constitution. So we always have to go back to whether this is commercial usage. You can't just say, oh, yeah, they used it. Because then we're stepping on the toes of freedom of speech and competition because we have a descriptive mark as here. Basically, when you look at the opposers program, she applied under Clause 41 for a trademark kid tribe for the purposes of providing fitness and exercise and workshops. And it was a very general one. And then she had this special program here that involved the hoop. It was only one of her programs. And in that, they had this section, which is Part 3. So basically, in the hoop-a-loop-a-script, if you can imagine, you're at a school assembly, elementary school assembly, and all the kids are running around. And there's a warm-up session. And all of a sudden, you're picking up hula hoops. So she uses the term hoop it up. And that's the functional command telling the kids to pick up the hoop. So the problem with the appeal board is that they overlooked the importance of Section 43A, which you cannot. This is a common law usage. We're not talking about kid tribe. We're not talking about hoop-a-loop-a-script. We're not talking about hoop hop. There are many terms that the opposer uses to advertise and promote her business. Basically, the hoop-it-up is buried in a very inconsequential use. It's almost the name of the song on page A61, right? There is a song. And I thought that was really interesting that the appeal board seemed to put a lot of emphasis on that song, which we all know you can't trademark words in a song. And they also, it's, you know, it's- Well, actually, you can have a trademark on words in a song, but- But does this serve as evidence that we're- You yourself are entitled to a trademark. I mean, that's what the law says. The law says you just have to show use analogous to trademark use in order to prevent someone else from getting it. They're not getting a trademark here. Why isn't this good enough to prove use analogous to trademark law? They are trying to get a trademark. They filed in 2014. And we don't have to find that they're entitled to a trademark in order for your client to lose. Well, under Section 43A, which there is a very detailed analysis that applies when you don't have a registered mark. So if you have a registered mark, you get a lot of presumptions. And the policy is to encourage parties to make people aware and to use so that they know that there is a trademark claim. And here, based on the facts and the usage, there was no- There's no signifying elements that show that this person intended to use it for commercial, for- Let me read. Well, McCarthy on trademarks, I realize this is a leading treatise and not a case, explains that use analogous to trademark for purposes of the section we're under means, quote, use of a nature and extent such as to create an association of the term with the user's goods. I mean, all of her screaming, hoop it up, waving her hands in the air, a song with the word hoop it up on it, why isn't that enough to create an association of the term with her goods, which is not necessarily enough to get herself a trademark, but it is deemed enough under the law to prevent you from getting one. Well, I think that's addressed in Section 2E and F, which creates a bar to trademark rights. I mean, basically, we have to recognize that she does have some rights in order to prevent another party from registering that name for a- So TTAB was looking at questions of evidence of prior use, were they not? They weren't looking at evidence of prior rights. They were looking at evidence of prior use, and as evidence for that prior use, there were, I believe, two videos and a recording. Is that not correct? Well, the use that's relevant here is not just use. I mean, if we did that, then I could say, well, I use the word to brush my teeth to my kids, therefore you can't name your case. I don't think the decision was based on just use. I mean, they were looking at the legal standard, commercial use, and how that fits into the decision on priority use. Well, it's very clearly defined in the case law that what is considered use for purposes of trademark. That's under Section 45. The mark must be used or displayed in the sale or advertising of services and services rendered in commerce. So anything- And weren't those two videos and that record evidence of commercial use? They were used-no, they were used functionally to tell kids to pick up the hoop. It was a song, it was a chant that was created, and when you're looking at unregistered markets- But the evidence was that it was used commercially. It wasn't just created. It was created for a commercial purpose. Isn't that right? I don't think the evidence shows that it was created for a commercial purpose. It was created for the purpose of telling the kids to pick up their hoops. But that's your interpretation, and this is-we have to give the highest level of deference to the PTO's fact-finding here. We have to review it for substantial evidence. So if any reasonable person, anyone at all, even if I would agree with you, if any reasonable person would have agreed with the PTO's decision, we've got to leave it alone. It's substantial evidence. You may not think the song Hoop It Up is for commercial use and identifies that as their trademark, and maybe I'd even agree with you, but I don't know that I can say the PTO- there's no substantial evidence to support the PTO's determination to the contrary. It's got a big burden. I think where it goes beyond that, I think that they have failed to apply applicable law, which is you have to look at two pesos and you have to look at Wal-Mart. Those cases make it very clear that when you're talking about a common law mark, and if you're going to assert rights, then you have to have a very specific analysis, and the TTAP failed to do any of that analysis, one of which they have to decide, is this a distinctive mark or is it a descriptive mark? That was completely overlooked. So the risk with what the TTAP did here is that it leaves it very subjective and arbitrary, and the reasons why we have two pesos and Wal-Mart in these cases that discuss is because people in commerce, you need some sort of protection, some sort of guidance, and the guidance that has been given by these case law and the guidance that we're given under Section 45 of the Lanham Act and Section 43A of the Lanham Act and Section 2E and F of the Lanham Act is that it's very clear that there's a very narrow window of what we consider a monopoly,  if you're going to claim exclusive rights to use a term, then you need to use it as a trademark, and what this party has used as a trademark is clearly hoop-a-palooza, hoop-hop, hooper-size, peace-out. In their book, hoop-hop, there's 45 pages, 50 pages, where every single page on there is marked with the word hoop-hop and kid tribe. Only on one page is there any reference to hoop-it-up. So in that particular page discusses the section, this is a curriculum guide that basically tells teachers how to do this exercise activity and at a certain point, because you're using hula hoops, there's a certain point that you are to indicate to all these kids when to pick up a hula hoop, and that's not commercial usage. There's no indication of commercial use. There's case law. You have affidavit testimony, I believe, by Ms. McCann, is it? McQuinn? Yes. You have testimony by her. Right. That you're selling it. She did claim that, but there's no circumstantial evidence outside of her intent, and intent is not really what the person intends as, like if I say, well, I intended that to be as a commercial use, that's not what the test is. The test is the effect it had on the consuming public. That's all we're concerned about in trademark law is what the consumers are, how they see the mark as used. Do they see, are they, if my clients, if the applicants use the word hoop it up, are they going to be tricked into thinking that they're attending Ms. McQuinn's hoop up palooza? Certainly not. She's called her program hoop up palooza and hoop hop and KIPP tribe. She has plenty of trademarks that she's using to commercially advertise her services. We're talking about competing services, and we're talking about somebody who decided to, the hoop artist, that are providing what they feel is an improvement on KIPP tribe. Okay. Sounds like we're well beyond our time, so I think we have to close. Okay. Thank you for your argument. The court takes the case under submission. Thank you.